UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLEN ROBICHAUX                                    CIVIL ACTION

VERSUS                                             NO.  09-3800

WARDEN LYNN COOPER                                 SECTION "N"(4)

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section

2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

I.      Factual Background

The petitioner, Allen Robichaux ("Robichaux"), is a convicted inmate incarcerated in the

Avoyelles Correctional Center in Cottonport, Louisiana.[2]  On April 22, 2005, Robichaux and three

co-defendants, Darell James, Nathaniel Fournette, and Harry Wilson, were charged by bill of

information in Orleans Parish with possession of intent to distribute 28 grams or more, but less than

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

200 grams, of crack cocaine or of a mixture containing cocaine or its analogous, possession with intent to distribute marijuana, and possession with intent to distribute crack cocaine.  Robichaux was also charged with being in possession of a handgun while in possession of marijuana.[3]

The record reflects that, on March 23, 2005, at approximately 10:30 p.m., Detective Corey Keaton and his partner, Detective Nichol Barbe, were on patrol when they reached the corner of North Prieur and Dumaine Streets in New Orleans where the Keep Moving Car Wash was located.[4] Detective Keaton saw that the lights were on inside and the officers stopped to watch the business for a few minutes.

The officers observed on the North Prieur side of the building, a set of garage bay doors that were chained together, but a gap remained.  Detective Barbe approached the bay doors, and she could see Darell James and Harry Wilson and one large bag and several small baggies of marijuana and a gun inside.  Detective Keaton walked to the front door at 1937 Dumaine Street and pounded on the door and announced his presence.  Through a small part of a window, Detective Keaton could see the first room and down a hallway into the building.  No one immediately answered the door, but he could see people scurrying around inside.  He saw Allen Robichaux run to the front door with a gun in his hand.  He saw Robichaux look out through the window, turn and yell "5-0," and then run back toward the rear of the building.  At that point, Detective Barbe called for back-up, and went to the front to assist Detective Keaton.  Keaton, in the meantime, continued pounding on the door announcing his presence, and he saw Nathaniel Fournette walk into the first room.

---

[3]St. Rec. Vol. 2 of 9, Bill of Information, 4/22/05 (as amended 5/2/05).

[4]*State v. Fournette*, 989 So.2d 199, 201-03 (La. App. 4th Cir. 2008); St. Rec. Vol. 5 of 9, 4th Cir. Opinion, 2008-KA-0254, pp. 2-6, 7/2/08.

Fournette was carrying a brown paper bag, which he placed in a bin located between the first room and the hallway.  The detective also saw him place a towel over the bag, and then close the bin.  At that point, Fournette went to the door, and Detective Keaton ordered him to open it.  Fournette eventually opened the door.  Detective Keaton recalled that he had spoken with Fournette in the past, and Fournette had identified himself as the manager of the car wash.

Detective Keaton entered the building and, in a second room, he saw Robichaux with his hand down inside of the cushions of the sofa upon which he was sitting.  When Robichaux removed his hand from the cushions, he dropped a gun and three bags of what appeared to be marijuana on the floor.  The gun turned out to be a plastic replica of a real gun.  The officers also seized from Robichaux a partially-burned cigar containing marijuana.

Sergeant Todd Morrell detained Darrell James in the hallway bathroom where James was trying to flush baggies of marijuana down the toilet.  As the Sergeant walked back further into the building to the room that contained the bay doors, he apprehended Harry Wilson in the loft.

After the officers secured all of the men, Detective Barbe left the scene and obtained a warrant to search the building.  From inside the bin in the front room, Detective Keaton retrieved the brown paper bag that was found to contain three plastic bags each holding what was described as a "brick" of cocaine as well as fourth smaller bag of cocaine.  Sergeant Morrell recovered from the loft, where Wilson had been found, a Crown Royal bag containing small green ziploc bags of marijuana.

Detective Barbe also searched the loft and found a large bag of loose marijuana, which was the bag she had seen from the bay doors earlier.  In the bathroom, where James had been detained,

the officers retrieved a plastic bag of individually-wrapped pieces of crack cocaine and additional ziploc bags of marijuana.

The Trial Court held a preliminary hearing as to each of the defendants on June 24, 2005, finding probable cause to detain each.[5]  The Trial Court also held a hearing on July 25, 2005, on the defendants' motions to suppress the evidence which was forced to be continued after Hurricane Katrina.[6]  After some rebriefing, on March 27, 2006, the Court denied the motion orally and with written reasons.[7]

Wilson alone filed a writ application seeking review of the denial of the motion to suppress.[8]  The Louisiana Fourth Circuit denied the application on the basis that he would have an adequate remedy on appeal if ultimately convicted.  The Louisiana Supreme Court also denied Wilson's related writ application without stated reasons.[9]

The defendant Fournette later filed another motion to suppress the evidence which was heard by the Trial Court on February 9, 2007, on behalf of all of the defendants.[10]  The Trial Court again denied the motion as to all defendants and found probable cause for the arrests.[11]

---

[5]St. Rec. Vol. 1 of 9, Preliminary Hearing Minutes (3 pages), 6/24/05; St. Rec. Vol. 6 of 9, Motion Hearing Transcript, 6/24/05.

[6]St. Rec. Vol. 1 of 9, Hearing Minutes, 7/25/05; St. Rec. Vol. 6 of 9, Motion Hearing Transcript, 7/25/05; *see e.g.*, St. Rec. Vol. 5 of 9, Motion to Suppress, 6/1/05.

[7]St. Rec. Vol. 1 of 9, Minute Entry, 3/27/06; St. Rec. Vol. 2 of 9, Trial Court Judgment, 3/27/06; State's Reply, 3/24/06.

[8]St. Rec. Vol. 8 of 9, 4th Cir. Writ Application, 2006-K-0580, 6/7/06.

[9]*State ex rel. Wilson v. State,* 948 So.2d 135 (La. 2007).

[10]St. Rec. Vol. 1 of 9, Minute Entry, 2/9/07; St. Rec. Vol. 6 of 9, Motion Hearing Transcript, 2/9/07; St. Rec. Vol. 2 of 9, Motion to Suppress Evidence, illegible file date.

[11]*Id.*

Fournette sought review of that order in the Louisiana Fourth Circuit on behalf of all defendants.[12]  The Court denied the application because he had an adequate remedy on appeal.[13]

Thereafter, on May 1, 2007, James entered a plea of guilty  and was sentenced to serve five years on each of counts one, two, and three.[14]

Fournette and Robichaux were tried before a jury on June 18, 2007, on counts one, two, and three as to Fournette and counts one, three, and four as to Robichaux.[15]  The jury found Fournette guilty as charged on the three counts indicated, and the jury found Robichaux guilty as to the three counts indicated against him.[16]

Robichaux filed motions for new trial and for post verdict judgment of acquittal, which were denied by the Trial Court on June 25, 2007.[17]  The State also filed a multiple bill against Robichaux on July 20, 2007, which was never pursued further.[18]

The Trial Court sentenced Fournette on August 10, 2007, to serve 30 year sentences on each count to run concurrently.[19]  The first five years of the sentence as to count one and the first two years of the sentence as to count three were to run without benefit of parole, probation, or suspension of sentence.

---

[12]St. Rec. Vol. 8 of 9, 4th Cir. Writ Application, 2007-K-0336, 3/19/07.

[13]St. Rec. Vol. 8 of 9, 4th Cir. Order, 2007-K-0336, 4/18/07.

[14]St. Rec. Vol. 1 of 9, Plea Minutes (James), 5/1/07.

[15]St. Rec. Vol. 5 of 9, Trial Minutes, 6/18/07; St. Rec. Vol. 6 of 9, Trial Transcript, 6/18/07.

[16]*Id*.; St. Rec. Vol. 2 of 9, Jury Verdict (3 pages, Robichaux), 6/18/07.

[17]St. Rec. Vol. 2 of 9, Motion for Post-Verdict Judgment of Acquittal, undated; Motion for a New Trial, undated.

[18]St. Rec. Vol. 2 of 9, Multiple Bill, undated.

[19]St. Rec. Vol. 5 of 9, Sentencing Minutes, 8/10/07; St. Rec. Vol. 6 of 9, Sentencing Transcript, 8/10/07.

The Court also sentenced Robichaux to serve 30 years on each count to run concurrently.[20] The first five years of the sentence as to count one and the first two years of the sentence as to count three were to run without benefit of parole, probation, or suspension of sentence. He was also assessed a $50,000.00 fine.

Shortly thereafter, on October 29, 2007, Wilson entered a plea of guilty to the first three counts and was sentenced to five years on each count to run without benefit of parole, probation, or suspension of sentence.[21]

On direct appeal, counsel for Robichaux and counsel for Fournette both argued in separate briefs that the Trial Court erred in denying the motion to suppress the evidence.[22] On July 2, 2008, the Louisiana Fourth Circuit Court of Appeal affirmed Robichaux's and Fournette's convictions and sentences.[23] After a detailed and thorough review of the transcript of the suppression hearing, the Court held that the trial court did not err in denying the motion to suppress.

Robichaux's counsel filed a writ application with the Louisiana Supreme Court which was denied without stated reasons on April 17, 2009.[24] Robichaux's conviction became final 90 days later, on July 16, 2009, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the

---

[20]*Id.*

[21]St. Rec. Vol. 1 of 9, Plea Minutes (Wilson), 10/29/07.

[22]St. Rec. Vol. 6 of 9, Appeal Brief, 2008-KA-0254, 4/14/08; Fournette's Appeal Brief, 4/14/08.

[23]*State v. Fournette*, 989 So.2d at 199; St. Rec. Vol. 5 of 9, 4th Cir. Opinion, 2008-KA-0254, 7/2/08.

[24]*State v. Fournette*, 6 So.3d 789 ( La. 2009); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2008-K-1815, 4/17/09; La. S. Ct. Writ Application, 08-K-1815, 8/4/08 (postmarked 8/1/08); St. Rec. Vol. 5 of 9, La. S. Ct. Letter, 2008-K-1815, 8/4/08 (showing postmark of 8/1/08).

United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    Federal Petition

On June 15, 2009, the Clerk of this Court filed Robichaux's petition for federal habeas corpus relief, in which he alleges that the state trial court violated his Fourth Amendment rights when it denied the motion to suppress the illegally seized evidence.[25]  The State filed a response in opposition to Robichaux's petition arguing that his claim is not entitled to review in this federal court and that the claim otherwise lacks merit.[26]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court no later than June 4, 2009.[28]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[25]Rec. Doc. No. 1.

[26]Rec. Doc. No. 10.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Robichaux's petition on June 15, 2009, when pauper status was granted.  Robichaux's signature on the memorandum submitted with the petition is dated June 4, 2009.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.

"procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

      The State filed a response in opposition to Robichaux's petition in which it concedes that the petition is timely filed and the claim has been exhausted in the state courts.[29]  The State further argues that Robichaux's Fourth Amendment claim is not appropriate for federal review since he had a full and fair opportunity to address the claims in the state courts.  Alternatively, the State argues that the claim is without merit.

      In his reply to the State's opposition, Robichaux argues that the state courts erred in finding a valid search and in denying the motion to suppress.[30]  The Court will proceed to address the claim.

## IV.    <u>Standards of Review of the Merits</u>

      The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

      A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

---

[29]Rec. Doc. No. 10.

[30]Rec. Doc. No. 13.

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## V.     Denial of the Motion to Suppress in Violation of the Fourth Amendment

Robichaux argues that the state trial court erred in denying the defense's motion to suppress the evidence seized from the car wash, because the officers made an illegal entry and seizure before securing a warrant. He also contends that there were no exigent circumstances that justified the warrantless entry and search. As a result, he argues the evidence used at trial should have been suppressed.

The Trial Court first considered the motion to suppress filed by Robichaux and other defendants in the pretrial hearings. The court denied the motion in its written judgment after finding no basis to suppress the evidence. After review of the pretrial motion hearing and the arguments by counsel, the claim was also resolved against Robichaux by the Louisiana Fourth Circuit on direct appeal. The Louisiana Supreme Court denied the subsequent writ application without stated reasons. The opinion of the Louisiana Fourth Circuit, therefore, was the last reasoned decision of the state courts on this issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, after considering the testimony received and additional briefing and argument of counsel, the state trial court denied the motion to suppress finding that the officers had probable cause to enter the building and reasonable belief that the drugs would be moved before obtaining

10

a warrant.[31]  The Court noted that the four men knew the police were outside, and they in fact had

begun to hide or destroy evidence when the officers entered.  This created the necessary exigent

circumstances to support their entry, and the search and seizure.

On direct appeal, the Louisiana Fourth Circuit also considered the issue of whether the

detective's viewing into the garage and the later entry into the building by the officers were legal

and constitutional without having first obtained a warrant.[32]  The Court determined that Detective

Barbe acted properly in peeking through the partially opened garage bay door.  The Court went on

to find, however, that any exigency that the officers had was caused by Detective Keaton's decision

to pound on the door.  The Court noted that Detective Keaton testified that the suspects would not

have been able to escape the car wash undetected while the officers obtained a warrant.  He also

conceded that there was no indication that the defendants knew that the officers were outside or that

they had seen the drugs inside until Detective Keaton pounded on the door, announced the officers'

presence, and demanded that they open the door.  The circuit court found that without exigent

circumstances, the officers could not lawfully enter without a warrant.

The Court held, however, that although the officers' entry was not lawful, that did not

mandate that the evidence had to be suppressed.  The Court resolved that the search warrant affidavit

contained no information that was gleaned from the officers' illegal entry into the car wash.  It was

instead based on legally obtained information.  The Court concluded that the evidence seized based

on the warrant was not tainted by the illegal entry, and the inevitable discovery doctrine would apply

---

[31]St. Rec. Vol. 2 of 9, Trial Court Judgment, 3/27/06.

[32]*State v. Fournette*, 989 So.2d at 199; St. Rec. Vol. 5 of 9, 4th Cir. Opinion, 2008-KA-0254, 7/2/08.

11

to the seizure in this case.  The Court found that the trial court did not err by denying the motion to suppress the evidence in the case.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, 428 U.S. at 494.  A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  (emphasis in original) *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Robichaux does not argue that he was denied a full and fair hearing on the motion to suppress or on the Fourth Amendment claims raised before this Court.  The record shows that Robichaux and his counsel presented the arguments in support of the motion to the Trial Court, which conducted a full hearing.  He then presented the claims to the Louisiana Fourth Circuit on direct appeal, which considered the claims in a well-reasoned, published opinion.  The claims were then brought to the Louisiana Supreme Court, which denied relief.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  *Andrews*, 21 F.3d at 631.

The record demonstrates that the state courts provided Robichaux, who was assisted by counsel throughout, with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal habeas corpus review.  *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002).

Accordingly, the holding in *Stone v. Powell* bars review of Robichaux's Fourth Amendment claims.  *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994).  Robichaux's claim challenging the denial of the motion to suppress in violation of the Fourth Amendment must be dismissed with prejudice.

## VI. <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Allen Robichaux's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[33]

New Orleans, Louisiana, this 10th day of February, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.